The **FIRST NATIONAL BANK OF MONTGOMERY**, as Executor of the Estate of Bernard Mount, Deceased, Plaintiff,

v.

The **UNITED STATES** of America, Defendant.

Civ. A. No. 1792–N.

United States District Court
M. D. Alabama, N. D.
Dec. 5, 1962.

James J. Carter, Montgomery, Alabama, for plaintiff.

Ben Hardeman, U. S. Atty., Rodney R. Steele, Asst. U. S. Atty., Montgomery, Ala., and Edward S. Smith, George A. Hrdlicka, Hubert M. Doster, Attys., U. S. Dept. of Justice, Washington, D. C., for defendant.

JOHNSON, District Judge.

This action was instituted by The First National Bank of Montgomery as the taxpayer in its capacity as the duly authorized and acting executor of the estate of Bernard Mount, deceased, for a refund of estate taxes in the amount of $8,108.22, plus interest. The case is now submitted to this Court upon the pleadings and exhibits thereto, the pretrial order, the stipulated facts and exhibits thereto, and the briefs of the parties. Upon this submission this Court now, in this memorandum opinion, makes the appropriate findings of fact and conclusions of law.

In June 1954, over three years prior to his death, Dr. Bernard Mount created an irrevocable trust and transferred property of the value of $50,281.67 to The First National Bank of Montgomery, Alabama, as trustee. The beneficiary of the trust was Dr. Mount's wife. At the time of the establishment of the trust, Dr. Mount was 74 years of age and his wife was 66 years of age. After the establishment of the trust, Dr. Mount continued to have a personal annual income of approximately $9,500 a year and his wife, Kate S. Mount, had an income, including approximately $1,900 from this trust, of approximately $6,500 per year. When the estate tax return on Dr. Mount's estate was filed the value of the property transferred to this trust was not included in his gross estate. The Internal Revenue Service, upon examination, determined that the trust was one which had been created for the support of Mrs. Mount, a legal dependent, and that under § 2036(a) (1) of the Internal Revenue Code of 1954 and § 20.2036–1 (b) (2) of the Estate Tax Regulations, the value of the trust corpus was includable in Dr. Mount's gross estate for estate tax purposes. Upon this determination, the defendant assessed and collected a deficiency estate tax on the estate of Bernard Mount, deceased, in the amount herein sued for.[1] Claim for refund was timely made to the defendant; in due course it was refused and this litigation was instituted.

The provisions of the trust that are here pertinent are:

"3. The Trustee shall hold said trust estate in trust for the use and benefit of my said wife, Kate S. Mount, for and during the lifetime of my said wife. During such period my said Trustee shall pay over to my said wife, in such installments as may be convenient to her, for her support and comfort, the entire net income from said trust estate. If at any time during such period the net income from said trust estate shall not, in the opinion of the Trustee, be sufficient, when supplemented by the income to which my wife is entitled from other sources, for her proper support and comfort, then and in such event the Trustee shall have the right, power and authority to pay over to my said wife such additional sum or sums out of the principal of said trust estate, as to it may seem necessary or desirable for

---

1. The assessment and collection included other amounts not herein pertinent.

said purposes. All payments made by the Trustee to my said wife hereunder shall fully discharge the Trustee as to amounts so paid, without obligation on the part of my said wife to account therefor.

"4. Upon the death of my wife, said Trustee shall forthwith divide said trust estate into two shares as nearly equal in value as can reasonably be accomplished, and said Trustee shall thereafter hold one of said shares in trust for the use and benefit of my son, Bernard Mount, Jr., and said Trustee shall hold the other of said shares in trust for the use and benefit of my daughter, Celia Mount Newbold, regularly paying to each of them, respectively, the income from said respective shares, annually, or at such more frequent intervals as shall be convenient to them, so long as they, respectively, shall live."

Following the establishment of the trust herein involved, the settlor gave no directions or instructions to the trustee with reference thereto. From and after the establishment of the trust herein involved $450 of the income therefrom was invested for Mrs. Mount's account, at her direction, and the balance was periodically deposited to her separate bank account; from this separate bank account Mrs. Mount paid substantially all of the Mounts' household expenses and her personal expenses.

The pertinent portion of § 2036 of the Internal Revenue Code of 1954 is as follows:

"§ 2036. Transfers with retained life estate.

"(a) *General rule.*—The value of the gross estate shall include the value of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which

does not in fact end before his death—

"(1) The possession or enjoyment of, or the right to the income from, the property."

The pertinent portion of § 20.2036–1 of the Treasury Regulations is as follows:

"SEC. 20.2036–1

\* \* \*

"(b) *Meaning of Terms.*

\* \* \*

"(2) The 'use, possession, right to the income, or other enjoyment of the transferred property,' is considered as having been retained by or reserved to the decedent to the extent that the use, possession, right to the income, or other enjoyment is to be applied toward the discharge of a legal obligation of the decedent, or otherwise for his pecuniary benefit. The term 'legal obligation' includes a legal obligation to support a dependent during the decedent's life time."

It is quite apparent that § 2036 provides for the inclusion in the gross estate of property, donatively transferred, where the decedent retained for life, or for any period not ascertainable without reference to his death, or for any period which does not in fact end before his death, the possession or enjoyment of, or the right to the income from the property. It is further apparent that the Treasury Regulations hereinabove set out provide that the possession or other enjoyment of the transferred property is considered to have been "retained" by the decedent to the extent that the property, or the income therefrom, is to be applied toward the discharge of a legal obligation of the decedent or otherwise for his pecuniary benefit. Under this regulation, the term "legal obligation" includes the obligation to support a dependent. The authorities for the proposition that the value of trust property should be included in the grantor's gross estate where he retained the right to have the income used to discharge his legal obligations, and, hence, reserved

the possession or enjoyment of, or the right to the income from the property, are Helvering v. Mercantile-Commerce Bank & Trust Co., 111 F.2d 224 (8th Cir.), certiorari denied, 310 U.S. 654, 60 S.Ct. 1104, 84 L.Ed. 1418; Commissioner v. Dwight's Estate, 205 F.2d 298 (2d Cir.), certiorari denied, 346 U.S. 871, 74 S.Ct. 121, 98 L.Ed. 380; Helfrich's Estate v. Commissioner, 143 F.2d 43 (7th Cir.); Estate of McKeon v. Commissioner, 25 T.C. 697; Estate of Fry v. Commissioner, 9 T.C. 503. The theory of these cases is that in such instances the reservation by the grantor is equivalent in law and in fact to the retention of the income itself.

In Alabama the law is clear concerning the obligation of the husband to support his wife. Alabama Code of 1940, Title 34, § 90:

> "Any husband who shall, without just cause, desert or wilfully neglect or refuse or fail to provide for the support and maintenance of his wife; * * * shall be guilty of a misdemeanor and, on conviction thereof, shall be punished by a fine of not exceeding one hundred dollars, or be sentenced to a term in the county jail, or at hard labor for the county for a period of not more than twelve months, or the fine may be in addition to either sentence to jail or to hard labor."

See also the Alabama case of Lasseter v. Lasseter, 266 Ala. 459, 97 So.2d 555.

This Court is of the conclusion that the purpose of the trust here in question was to provide money for the "support and comfort" of Mrs. Mount. Dr. Mount's intention could hardly be made more apparent. See trust provision, supra. The fact that Mrs. Mount was not required to account for the use of the income did not change the obligation on the part of the trustee to see that the income from the trust property was paid to Mrs. Mount for a specific purpose, that is, her support and comfort. It is significant in this case that Mrs. Mount used all except the sum of $450 of the income she received from this trust to the settlor's intended purpose.

The plaintiff relies heavily upon the case of Colonial-American National Bank of Roanoke, Executor, etc. v. United States, 243 F.2d 312 (4th Cir., 1957). In the Colonial-American National Bank case, the trust was by Dr. Stone for a period of twenty years and the property was to be held in trust for his wife during that period. Dr. Stone died approximately four years after creating the trust, and from the time of making the trust until his death he continued to pay for the support and maintenance of his wife, and the trust income was never used for that purpose except for one hospital bill. There, the trust instrument provided that the settlor's purpose was to provide his wife "with an income sufficient to maintain her." In that case, the Court of Appeals for the Fourth Circuit held that the value of the trust property was not to be included in the estate of Dr. Stone. The Court observed that a husband may make a gift to his wife "without affecting his duty of support," and the Court said, further, "there is no presumption that such a gift is in discharge of the donor's marital duty." It is quite apparent that the Court in the Colonial-American National Bank case placed considerable importance upon the fact that Dr. Stone continued to provide all the financial support for his wife from the date of making the trust until his death. In this connection, the Court stated, "We think the totality of the circumstances negatives any implication that the trust was designed to discharge or relieve the decedent's legal obligation to support his wife." This Court is of the opinion that the facts in this case are materially different from those in the Colonial-American National Bank case; that this difference necessitates a conclusion different from that reached by the Court in that case. If this Court is in error in attempting to distinguish the facts in this case from those in the Colonial-American National Bank case, then this Court elects to follow the United States Court of Appeals for the Sec-

ond Circuit in Commissioner v. Dwight's Estate, 205 F.2d 298 (2d Cir., 1953), certiorari denied 346 U.S. 871, 74 S.Ct. 121, 98 L.Ed. 380. In the Dwight case —the opinion written by Circuit Judge Augustus N. Hand [2]—the Court found that the decedent Dwight established a trust in 1931 for the benefit of his wife and children. The trustee was directed to distribute 40% of the income to the wife and 10% to each child "for their support and maintenance." In that case the Commissioner contended that 40% of the value of the trust was includable in Dwight's gross estate by reason of the provisions of the Internal Revenue Code,[3] since the income was to be used to discharge his legal obligation to support his wife. In deciding the case in favor of the Commissioner, the Court of Appeals for the Second Circuit stated:

"Although a husband is of course able to make a gift to his wife without affecting his duty to support her, Shanley v. Bowers, 2 Cir., 81 F.2d 13, 15, we think that this was clearly not the case here as to the first trust. The decedent was under a legal duty to support his wife under the New York law, e. g., DeBrauwere v. DeBrauwere, 203 N.Y. 460, 96 N.E. 722, 38 L.R.A.,N.S., 508, and the trust instrument provided that the income was for her 'support and maintenance.' We agree with the dissenting opinion in the Tax Court that this provision was not meaningless, and think that Helvering v. Mercantile-Commerce Bank & Trust Co., 8 Cir., 111 F.2d 224, certiorari denied 310 U.S. 654, 60 S.Ct. 1104, 84 L.Ed. 1418, is not distinguishable on the ground that there the settlor reserved an 'enforceable right' to have the income applied toward his wife's support in the trust instrument. See also Helfrich's Estate v. Commissioner, 7 Cir., 143 F.2d 43; Hooper v. Commissioner, 41 B.T.A. 114. Having furnished his wife with this income the husband had in part at least discharged his legal obligation of supporting her. Northeastern Real Estate Securities Corp. v. Goldstein, 2 Cir., 163 F.2d 963; Wanamaker v. Weaver, 176 N.Y. 75, 82, 68 N.E. 135, 65 L.R.A. 529. The existence of the income from the trust would certainly have been a *pro tanto* defense in any suit for support brought by his wife. We do not see how the absence of a provision in the trust for rigid supervision of the wife's expenditures in any way affects this reasoning. Nor do we see why it should matter that the decedent's full obligation to support may not have been discharged, Garlock v. Garlock, 279 N.Y. 337, 18 N.E.2d 521, 120 A.L.R. 1331. Thus, since part of the income of the first trust was, in the language of the regulations, 'to be applied toward the discharge of a legal obligation of the decedent,' we hold that he retained the enjoyment of that income and accordingly 40% of the value of the trust is includible in his gross estate."

In this case, as in the Dwight case, the trust instrument places an obligation upon the trustee to pay the income to the wife for her "support." The irrefutable effect of creating this obligation on the part of the trustee in both this case and the Dwight case is to substitute the trustee for the husband by transferring his obligation to support his wife to the trustee.

This Court concludes, therefore, that the value of the trust created by Dr. Bernard Mount on June 21, 1954, was properly includable in the gross estate of Dr. Mount.

A judgment in this case will be entered for the defendant.

2. That part of the opinion in the Dwight case which is pertinent to the case now before this Court was joined in by Circuit Judge L. Hand.

3. The section involved in the Dwight case was § 811(c) (1) (B) of the 1939 Code, this section being the forerunner of the present § 2036.