**Marian A. BYRUM, Executrix, etc.,
Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. 68–42.**

United States District Court,
S. D. Ohio, E. D.

April 16, 1970.

Larry H. Snyder, of Chamblin, Snyder & Henry, Columbus, Ohio, for plaintiff.

Robert M. Draper, U. S. Atty., Columbus, Ohio, Mitchell Rogovin, Asst. Atty. Gen., and David A. Wilson and Robert J. Campbell, Dept. of Justice, Washington, D. C., for defendant.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on the motions of both the plaintiff and the defendant for summary judgment under the provisions of Rule 56 of the Federal Rules of Civil Procedure.

Rule 56(a) Fed.R.Civ.P. authorizes that "a party seeking to recover upon a claim * * * may * * * move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof." Rule 56(b) Fed.R.Civ.P. makes essentially similar provisions with respect to a defending party. Where the pleadings and affidavits on file show that there is no genuine issue as to any material fact relating to the issues presented by the motion, a summary judgment on the motion, if appropriate, may be rendered forthwith.

On July 16, 1968, the plaintiff, Marian A. Byrum, Executrix of the estate of Milliken C. Byrum, deceased, moved this Court for summary judgment in her favor on the pleadings. A memorandum of law accompanied this motion. Then on September 13, 1968, defendant, United States of America, filed its motion for summary judgment and the memorandum in support thereof was received on October 2, 1968. Finally, on October 21, 1968 the plaintiff filed a reply memorandum.

The facts which have given rise to this lawsuit are undisputed and the vehicle of summary judgment as provided in the federal rules seems a most appropriate method of resolving the issues presented. Under a Trust Agreement dated December 9, 1958, a certain block of common capital voting stock was transferred by the decedent during his lifetime to the Huntington National Bank as sole trustee. The agreement provided for a discretionary trust for the benefit of the settlor's children with the corpus being administered as a single trust until the youngest child reaches the age of 21 years. Prior to the youngest child reaching the age of 21 years, the distribution of income and principal was in the absolute and sole discretion of the trustee "with due regard to the individual needs for education, care, maintenance and support" of the children or any child.

The trust, by its terms, was irrevocable with the rights retained by the settlor being the power to vote the unlisted corporate stock in the trust, the power to remove the designated trustee and appoint a successor corporate trustee, and the power to veto the sale or investment of the trust corpus.

The Court is directly concerned with the interpretation to be given to a section of the Internal Revenue Code. Section 2036 of Title 26, United States Code, provides in relevant part:

(a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact and before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

The specific provision of the Trust Agreement which will be the focus of the present judicial inquiry is Section 5.06. It provides:

[The Trustee shall have the power] To vote by proxy or in person any stock or security comprising a part of the trust estate, at any meeting, except that, during Grantor's lifetime, all voting rights of any stocks which are not listed on a stock exchange, shall be exercised by Grantor, and after Grantor's death, the voting rights of such stocks shall be exercised by Grantor's wife during her lifetime.

The precise legal question presented to the Court for determination is whether Section 2036(a)(1) and/or (2) of the Internal Revenue Code operates to make includable in the gross estate of the decedent the unlisted corporate stock mentioned in Section 5.06 of the Trust Agreement.

The Court is not without legal precedent on this matter although there does not appear to be any prior decisions dealing with these identical set of facts. With respect to Section 2036(a)(1) of the Internal Revenue Code, the includability of the corpus of the trust in the gross estate for estate tax purposes is predicated upon three requirements: (1) there must be an inter vivos transfer by the decedent by trust or otherwise; (2) the decedent must have retained "the possession or enjoyment of or the right to income from the property"; and, (3) such retention of reservation must have been for the decedent's life or for any period not ascertainable without reference to his death or for any period which does not in fact end

before his death. Richards v. C. I. R., 375 F.2d 997 (10th Cir. 1967) and 26 U.S.C.A. § 2036(a)(1).

There is no dispute in this case with respect to (1) and (3) above, but the applicability of (2), that is, whether the decedent retained "the possession or enjoyment of or the right to income from the property," is a determination that must be made by the Court.

For the purposes of the statute which makes includable in a decedent's gross estate for federal tax purposes the value of all property of which the decedent made a transfer under which he retained for his life the possession or enjoyment thereof, the term enjoyment is not a word of art but is synonymous with substantial present economic benefit. Mc-Nichol's Estate v. C. I. R., 265 F.2d 667 (3d Cir. 1959), cert. denied, 361 U.S. 829, 80 S.Ct. 78, 4 L.Ed.2d 71.

The Government's own regulations seem to follow a similar interpretation of this term:

The "use, possession, right to the income, or other enjoyment of the transferred property" is considered as having been retained by or reserved to the decdent to the extent that the use, possession, right to the income, or other enjoyment is to be applied toward the discharge of a legal obligation, or otherwise for his *pecuniary benefit*. Reg. § 20.2036–1. [Emphasis added.]

Case law defining the exact scope of the term "substantial present economic benefit" is somewhat sparse, especially with reference to the fact situation that is presented in this case. The case of Yeazel v. Coyle, 2 CCH Fed. Estate & Gift Tax Rep. (68–1 U.S. Tax Cas.) ¶ 12,524 (N.D.Ill. Nov. 18, 1968), provides the Court with a relevant discussion of the matter. In *Yeazel,* the testator had transferred to herself as trustee, shares of stock in a corporation in which she was, prior to the transfer, sole shareholder. The trust instrument gave her

broad authority to sell and invest the corpus without the limitation of any statute or rule of court concerning investment by trustees and she was empowered "to vote all stock held as part of the trust property." The Government contended that the trust transfer left the decedent with significant powers over this stock, including the ability to control the corporation and thus the distribution of dividends, thereby making the value of the stock includable in the gross estate under Section 2036(a)(1).

It is apparent that the decedent retained no direct pecuniary benefit from the stock she placed in trust. All of the income was to be paid to the named beneficiaries. The corpus of the trust was irrevocably earmarked for the four beneficiaries. * * * It is true that by reason of retaining the voting rights, Mrs. Crowley remained in the position of controlling the dividend policy of the corporation and the distribution of income to the beneficiaries. Although Mrs. Crowley could have prevented the corporation from paying a dividend, that action would not have deprived the beneficiaries of the possession or enjoyment of either the property or income because the retained earnings of the company would increase, thus making the beneficiaries' stock more valuable. * * * Even without the direct payment of dividends, the beneficiaries were in a position to receive the economic benefit of the stock since they could use it as security for a loan which would provide them with cash until the end of the ten year period, at which time they would receive the stock itself. If the Government's argument were carried to its logical conclusion, the donor of the stock in a closely held corporation would be required to divorce himself of all remaining interest in the corporation in order to make his gift effective for tax purposes. The sweep of Section 2036(a) is not that broad. *Yeazel, supra,* at 8684–5.

The Court substantially agrees with the rationale of the *Yeazel* opinion. The Government seeks to distinguish *Yeazel* on the ground that the decedent there was also the trustee, thus her retained power was limited by the fiduciary obligation, enforceable in a court of equity, imposed by her position as trustee. The fact that Byrum in this case was not a trustee, however, indicates to the Court that Byrum was that much further removed from control of the economic benefits of the stock. Further, while it is true that Byrum had the power to remove the trustee and appoint a successor corporate trustee at any time (thus in reality, the Government suggests, Byrum had trustee type control over the trust corpus), whatever powers exercised by any successor corporate trustee were subject to scrutiny by a court of equity, thus preventing abuse of the trustee's power in favor of Byrum and thus squaring the *Yeazel* rationale with the facts in the instant case.

Section 2036(a)(2) of the Internal Revenue Code provides that the value of the gross estate of a decedent shall include the value of all property in which the decedent has retained:

the right, either alone or in conjunction with any person, to designate the person who shall possess or enjoy the property or the income therefrom. 26 U.S.C.A. § 2036(a)(2).

The Government contends that the settlor's retention of his right to vote the unlisted stock transferred in trust together with his right to vote the stock he still owns gives him the right to designate the recipient of the income under the Trust Agreement. Reliance is placed by the Government on Revenue Ruling 67–54, 1967–1 Cumulative Bulletin 269. This ruling states:

The value of nonvoting corporate stock transferred in trust is includible in the grantor's gross estate where the grantor retained for the remainder of his life a controlling interest in the corporate voting stock and where

the trustee was restricted in his power to dispose of the nonvoting stock, and the trustee held the nonvoting stock at the grantor's death. Since the grantor retained the power to regulate the income from the transferred property, he retained for his life or for a period which did not in fact end before his death the right to designate the persons who shall possess or enjoy the property or the income therefrom. The value of the nonvoting shares included in the gross estate should reflect the additional value inherent in the closely held voting shares by reason of control of the company policies.

The *Yeazel* court distinguished this Revenue Ruling by stating:

My attention is also called to Rev.Rul. 67–54, 1967–8, Int.Rev.Bull. 10, which I am urged to regard as stating that a grantor with control over both the dividend policy of a company and the assets of the trust is able to designate who benefits from the property or income. As applied to the facts in this case, however, I cannot agree with this view of the statute since it is clear that only the four named beneficiaries can benefit from the stock. *Yeazel, supra*, at 8685.

The Court determines that Revenue Ruling 67–54 cannot operate to make includable this trust property in the decedent's estate. The decedent's power to control the trust property was not without limitation and the Court considers that sufficient control was relinquished, and sufficient checks were retained on what control was retained, to avoid the application of Section 2036 to the facts in the instant case. See, generally, Jennings v. Smith, 161 F.2d 74 (2nd Cir. 1947) and 3 J. Merten's Estate and Gift Tax § 24.30.

Whereupon, the Court determines that the motion of the plaintiff for summary judgment is meritorious and therefore it is granted. The motion of the defendant for summary judgment is without merit and therefore it is denied.

Defendant is hereby ordered to refund the sum of $13,202.45, together with interest at the rate of six percent (6%) per annum from June 28, 1967.